When you're ready, please court. My name is Richard Wong represent TW the appellate in this matter. I'd like to reserve two minutes of my time. Okay. Your honors. I guess if I could try to boil down the issues here. The way I see them. I think if this statute that we're talking about required a person who is a registered sex offender to show up every 90 days at the jail, have their booking photo taken and to sit in a jail cell for 15 minutes to an hour. The district court and this court would have no problem saying that's punishment. That can't be applied retroactively. And I would submit that the effect of the statute on the individual is no different than if that's what the statute required. Because the real punishment that incarceration imposes is that you are stuck someplace you don't want to be and you can't be somewhere else doing something else you want to do. That's the essence of incarceration. The restriction on your liberty. The requirements of this statute impose all the same restrictions. I don't think there's a significant distinction. I'm not clear at this point whether or not there was a requirement about taking the photograph in the Alaska statute. But there was definitely the requirement, at least as we understood the statute at that time, you have to show up in person four times a year. Correct. Same as here. Same as here. Yeah. And of course I would submit that the 9th Circuit got that right based upon the facts as they were viewed. And the Supreme Court didn't say we got that wrong if the statute had been as we thought it was. They were at great pains to say no, that's not what the statute says, leaving open whether we were right as to what we thought the statute was. Correct. So are we bound by what we decided in Ottie? Well, I don't think you can be bound by a decision that's been overturned technically, but Or based on a false premise. But certainly I would suggest that that decision was correct based upon what the court's perception of the facts were And that's a strong indication of how the court should decide this case. But I don't think I can argue that it's binding in any way. Okay. The other aspect I'd like to talk about is the way that the district court looked at this. And I think the district court made some significant errors. The district court recognized that these requirements impose significant restrictions on a person's liberty. But it got kind of around that by saying, well, but if it's going to interfere with something important in your life to do this, you can somehow make arrangements to change when you show up. But there's nothing in the record here that says you can do that. The statute says the sheriff sends you a notice that during this week you have to show up during business hours and perform these acts. And business hours mean like banker's business hours? Police stations are open 24 hours a day. What do we mean by business hours? The statute says during business hours. So I presume we're talking, you know, 9 to 5 or somewhere in that period of time. Certainly not 10 o'clock at night. If you have a job that requires you to be at work 9 to 5, this could be extremely difficult for you to comply with. Or a job that requires travel. Or a job that requires travel. Well, we really don't know what business hours mean in this context because we don't, I mean, as Judge Fletcher pointed out, the police department is a 24-hour operation and there are people there administratively 24 hours. Well, but I think you fall back to you interpret those words to mean what they're commonly understood to mean. And I think that commonly understood would be 9 to 5 or in that period of time. We'll see whether they make an argument that business hours means 24 hours a day. We may find out. We may know a little more here soon. But even if it's 24 hours a day, you still have that problem with it interferes with your ability to do something else during that period of time you're required to travel to the police station, go through the process of what's required once you get there. So it is punishment. It's quintessentially restrictions on your liberty. And these are people who finished any supervised release, any parole. I mean, they're otherwise free to go about their business. Absolutely. And that's the situation with my client in this case. But there is nothing in the statute that says the sheriff's department has to accommodate you in any fashion whatsoever. That you can't, you know, that you can only say, hey, I've got my sister's wedding this week and I need to go down to California for that. Sheriff doesn't have to accommodate that one at all. So when the district court looked at this and said, well, yeah, these could be serious impositions on your liberty, but you can somehow get around them, there's really nothing in the record to support that at all. And even if you could, it's up to the discretion of the sheriff. So, again, there's no, now how much liberty you have is in the hands of the sheriff. So there really, this is clearly punishment. It may have a regulatory purpose, but the effect on the individual is the same as punishment, the same as being incarcerated during that period of time. And it's, the other aspect of this that I think the court didn't focus on enough is that, what does this really accomplish that can't be accomplished by other means? Certainly they want to get information. That can all be provided by mail or at least you can have the alternative. You can come do it in person or you mail something in. If they're worried about the accuracy of it, you have them sign it under oath, say this is accurate. Either way, to verify it, somebody's going to have to go out to the address if they want to verify that. There's nothing that would indicate you're necessarily going to get more accurate information from somebody who comes in and fills out a form at the police station as opposed to filling it out at home and mailing it to you. Well, maybe. The one thing that seems to me is served by having the end purpose rather than mailing it in, is maybe you don't need to take a picture of somebody four times a year, but people's appearances do change and the in-person helps that. And it may help that, and again, that may be a regulatory purpose, but I would submit that that is, again, a part of what is a punishment. Because when, as an unconvicted person or a person who's served their sentence and has paid their debt to society, who can tell me I have to stand someplace and have my picture taken by the police? Nobody can tell me I have to do that. And I think anybody who would be told, you have to do that, would consider that a form of punishment and a restriction on their liberty. Part of my liberty is the choice not to stand there and pose for that picture. It's like getting your mug shot taken. And the police can't take your mug shot generally unless they have probable cause to arrest you and you're going through a... Is there anything in the record that says what the police do with this picture? Do they just put it in a file and hang on to it? Do they post it on the Internet? What do they do? I don't think there's anything in the record, but the assumption would be they post it on the Internet because that's what they generally do and that's the reason. But the other aspect of that picture taking is this posting on the Internet and the Pataki case, I think, discussed a lot of this notice requirement and some other cases. That is like kind of the scarlet letter, which is, yes, has a regulatory purpose, but also it's punishment. Anyone who is required to wear that letter considers that punishment. And anyone who's going to have their picture put on the Internet and have society told, stay away from this person, would consider that a form of punishment. So, again, I think that is something that wasn't really thoroughly looked at here because the bigger issue is the physical restriction on liberty, but I think that's also a part of that taking away of liberty to say, you have to post for this picture and that picture is going to be put on the Internet for everybody to view. So I think, yes, there may be a regulatory purpose, but I think all the things that want to be done, and it would be a different issue if it was just you need to send in a current picture. You don't have to come in physically and post for it. That would be a different issue. That's what we're not dealing with here. But I think that would even raise some concerns. But certainly even the picture could be one where you have to send in a current picture, you have to provide all current information, you can do it by mail or e-mail or whatever, provide that option, then you wouldn't have the problem of a scheme that actually imposes punishment. Okay. Let's start from the other side. You've saved a little time. There's a button that moves that podium down. I'm not sure how far down it will go. I was experimenting with this novel machine before. Okay. Okay. Good morning. My name is Stephen Kinn. I'm a deputy prosecuting attorney, and I serve in the Spokane County Prosecutor's Office as the statutory legal advisor to the sheriff. This matter was brought before Judge Succo on our motion for a summary judgment, which was granted. It was granted on some fairly straightforward, undisputed facts. The court may have some questions about those facts, but basically on those undisputed facts, as I see it, Judge Succo had two areas of law that he was reviewing to see if there was any material question of fact to grant as a matter of law. First of all, the appellant basically was making a facial challenge to 9A44130, subsection 7, which is the amended portion of the statute that requires reporting every 90 days in person. In other words, Judge Succo, when he reviewed the facts, was reviewing this under a standard that there's no set of facts that exist that would establish the validity of this subsection under the ex post facto laws. Do you mean invalidity? Yes. Yeah. Yes. Sorry. Yeah, that's okay. The second factor that was critical to Judge Succo as a matter of law is under the intense effects test is whether from, again, the undisputed facts, the appellant could establish by the clearest proof that the effects of the statute was primarily punitive in effect and purpose. So, in other words, there's no argument under the intense effects test that the legislative intent of the statutory scheme was punitive. Yeah, that intent and effect, that's always a hard argument. I mean, in tort law, we know you intend the natural and probable consequences of your act. That is to say, what the effect is can be the intent. I understand that the law divides it into pieces, and we look first to intent, and then we look to effect. But in my mind, they're a little hard to distinguish sometimes. Well, I think it's pretty clear, at least in my mind, that they are distinguishable. There's been a considerable case, you know, body of case law before this circuit and, of course, the United States Supreme Court on the application of this test in sex registration. Oh, sure. No, no, I mean that that's the established test. Number one is their intent. Right. If there's no intent, nonetheless, is there effect? Yeah, sure. And I think it's Russell v. Gregoire, which is Washington's statutory scheme. This circuit has already declared that the legislative intent of this was that it was non-punitive. They had a legitimate civil intent in passing the statute. And I don't think Mr. Wall disputed that at the time of argument before the district court. So this is a facial challenge. This is a facial challenge. So just so we're clear, as long as there is one legitimate use or valid use, then it passes the facial challenge. Well, I think that fits into the intense effect stats because one of the factors under, I think it's Kennedy-Mendoza-Martinez, is that there has to be a rational connection to a non-punitive purpose. We have to find a rational connection in order to. . . Well, that's as to intent. That's not as to effect. No, that's as to effect. Well, but no, it seems to me as to effect. The central question in this case, and I think I'm going to phrase it in a way that most of you will agree, the central question in this case is, is it punitive in effect to require someone to appear in person four times a year at the police station? And that's absolutely correct. During business hours. During business hours. I'd like to just clarify the court. There's a question about whether this is 24 hours, and I think in the stipulated facts, but also as a matter of reality I have to represent to the court that for purposes of this registration statute, the police department is not open 24 hours. It can't even appear at a front desk. So we're talking about 8.30 to 5.00 on any five-day business week. But you need to understand also in the undisputed facts that as a matter of the way this system operates in Spokane County, is that a level two higher risk offender is notified every 90 days of a given week that they can appear at any time during those five days at their discretion. But if somebody works 8 to 5, how can they appear if they can't get off work? Well, I guess that goes to there is no evidence in this fact that the appellant provided. But we're looking at it on its face. We're not looking at a particular application to this particular defendant. We're looking on its face whether or not it has a punitive effect. And so if it's applied to people who have and generally people who, you know, are convicted felons have the types of jobs where they don't have the discretion to set their own hours. So how does that play into your analysis? Well, it plays into my analysis as to the extent of the restraint. Mr. Wall was saying, well, what if somebody had been placed in a prison cell? There are a lot of obligations where ordinary citizens have to appear at certain times for a limited period of time. The facts here are 15 minutes to an hour depending upon where the show is. It's on a recurring basis. It's on a recurring basis every 90 minutes. You know, I guess the example I give. You mean every 90 days? He said every 90 minutes. That's next year's law. I guess the example I give. I have an 81-year-old mother that lives in Coeur d'Alene, Idaho, that's going blind from a macular degenera. She has to take an eye test and she has to appear and get an examination from a doctor every six months in order to keep her driver's license. Is that an imposition? Yes. Does it amount to punishment? No. That's a little different because I'm assuming she's not working, and so she doesn't have to deal with whether or not she can get off work. And that's something she's doing for her benefit and not, you know, it's not something that's imposed upon her by the government. Well, and I guess you have to look at the two-fold analysis that the court goes to. First of all, is there a legitimate non-punitive purpose in the extent of the restraints? People, under the example of my mother, there could be people who are working, all right, that do that. Let's stick with the example that we have in the statute of someone who has to report every 90 days and it's during the hours where people typically work. Is that such a restraint that it becomes, in effect, punitive because it imposes such a burden on the individual who may or may not be able to take time off work? No, I don't believe so. Why not? I think that it does not fall within the common parameters of what we commonly consider to be punishment. I think appearing every 90 days for a period of five years, which you have to remember in the statute, too, that a petitioner has the ability, if he's a level two offender or three offender, to petition after five years if he's within compliance to get that. Yeah, let me ask you this. As you describe the statute, it sounds as though the person subject to this reporting requirement doesn't know a year ahead of time what week he's supposed to appear. They send him a note saying you're supposed to appear this week, and when do they send him that note? Well, they send him a note plenty of time in advance. How much? How plenty is plenty? Several weeks. That's not a lot if you've got an employer who isn't very accommodating. Well, I guess you always are going to have employers that are not very accommodating on a variety of things. Yeah, or if you have a job, you may reside in Spokane County, but you may have a job that takes you out of town a lot, and you may have to schedule ahead of time. And if you can't schedule, you know, six months ahead of time, all of a sudden, whoops, I've got this sales trip all set to go, well, I get a note from the police that says three weeks you've got to show up, and I've got a sales trip, or maybe I'm working on an offshore oil rig and I've set the schedule up. I mean, that's going to pose some difficulties. Well, it is. Your Honor's giving me a hypothetical, so I can tell you how it works in Spokane County, and that the detectives that have this obligation work with these people. Yeah. Now, is that in the statute? I'm not trying to interfere, but I've got to work on the fact that this is a facial challenge. Right, right. But I'm trying to tell you, in response to your hypothetical, the reality is that we're not going to go out and prosecute people because they can't make it the week of the third week of March. They'll work with people. The principal concern, and that's one of the regulatory purposes of this, if somebody doesn't show up at all, that starts causing concerns. Are they in compliance with the address? With a lot of statutes that are enacted, there are regulations that go along with those. Have there been any regulations implemented that would set up all of the, you know, specific steps in implementing the statute? No regulations except to the extent in Spokane County someone can petition, and in this case the appellant applied for that situation. They can petition to the sheriff to have their risk level lowered so they don't have to apply. If they've been in compliance for a certain amount of time, in this particular case he'd been in compliance. But there are no definite regulations about when you notify them and what sort of criteria are used. In a lot of states there's a statute, then there's an administrative code that implements the statutes. There's no WAC and that has been implemented. Did the Attorney General defer to the Spokane Prosecutor's Office on this? Are they aware of the case? Did they elect not to appear? You're asking me why I'm the only person that showed up with my battered briefcase in this case. Yes, the Attorney General at the district court level was notified to give them an opportunity to appear and defend the constitutionality of this act and chose not to intervene. They could have, but chose not. It's an affirmative choice on the part of the Attorney General. They were given the opportunity by the district court judge to do so. Let me ask you this. Assume for the moment, and this is an assumption, assume for the moment that our three-judge panel decision in the Alaska case, Doe v. Ottey. I'm sorry, your Honor, can you repeat that? Assume that our three-judge panel decision in what became the Smith case, the Alaska case, Doe v. Ottey. Assume that that decision is good law. That is to say that they interpreted the Alaska statute correctly to require reporting every quarter in person. If that decision is good law, do you lose? I lose at the Ninth Circuit level. That's what I mean. If that's good law, you know. I don't believe that's good law simply because the Supreme Court, Ninth Circuit was evaluating a variety of factors in addition to the in-person reporting requirement. They were also concerned with the dissemination of the information when it was originally before them. When it became Smith v. Doe and went before the United States Supreme Court, the United States Supreme Court reversed the Ninth Circuit not only because there was a misconception that there was an in-person reporting requirement, but also because they disagreed with the Ninth Circuit concerning the dissemination of the material. I think I understand pretty clearly what happened as the case was decided here and then went up. The Supreme Court decided the case stripped of the in-person reporting requirement, but if you put the in-person reporting requirement back in, how is this statute different from the statute we thought we had in front of us in Ottey? Well, it's not any different. I mean, you look at it and it's not any different. However, I just got to add as a matter of, I don't think in light of Smith v. Doe that the Ninth Circuit decision is valid, and you'd have to readdress that in terms of the present facts of this case, and you'd have to readdress the fact that if you look at the Kennedy factors, the fact of in-person reporting as a punitive factor is only one factor that you can say. No, I understand. No, the Supreme Court case in Smith. It's only one factor, so I'd ask the Court to readdress that again. Yeah. As I look at the Supreme Court's decision in the Alaska case, it's an open question. I can't tell how the Supreme Court would decide it from their opinion. The Supreme Court basically said, well, that's not an issue we're going to consider because in-person reporting wasn't required. That's right. Okay, I got that. Okay. Thank you. Thanks very much. Well, what about civil commitment statutes? Do they inform our decision at all here? I mean, there's the ultimate restraint on liberty in the name of treatment rather than punishment. Well, I don't think that's really relevant here because to do civil commitment, you have to go through some due process. Here, if you don't show up during the week you're supposed to show up, you've committed a crime and you can be sent to jail for that. So it's a completely different situation. There's no opportunity to have a hearing as to whether or not I should have been given an excuse to not show up that week or something. You've committed a crime once you fail to comply. So it's a completely different situation. And different because what are the criteria for civil commitment? Some showing of dangerousness? Yeah, in any kind of civil commitment process, you've got your normal due process rights before you can actually be confined in an institution. And here you're essentially being, your liberty is being restricted on pain of going to jail if you don't comply with the conditions that are, in fact, the restriction on your liberty. But how you started out, I mean, these are people who also served their complete sentence, didn't commit any new offense, didn't have this at the time they committed the offense or at the time they were sentenced, and now face much more severe restrictions on their liberty. And still the U.S. Supreme Court has said that's not a punitive punishment statute. It's a treatment civil statute for ex post facto purposes. But I still think there's, before that is imposed upon them, they get some kind of due process. And that you don't get here. But due process to determine what? That is to say, what are the criteria for civil commitment? That is to say, there is going to be involuntary confinement. And what are the criteria that are permissible? I mean, due process says you have to find the fact that you satisfy the criteria. Well, what criteria are we talking about? Well, I mean, civil commitment, I suppose it depends on what type of commitment you're talking about. But generally, you know, whether or not, under the state law that applies, whether or not the factors are met and the state can prove that you are subject to the statute. But here, as you pointed out, this is someone who has served their sentence, is no longer under any restrictions of the court, and now the statute just automatically imposes on them this requirement. Irrespective of dangerous, irrespective of treatability, irrespective of anything else. Exactly. That's why it's different. There's no process where someone determines that there's some reason why this should be imposed upon you. It's just automatically imposed. I understand it's different, but if you would agree with me, there's a big difference between reporting to a police station every 90 days and being locked up indefinitely in a prison situation. Yeah, certainly there's a difference. But there's a difference in not in the nature of what's being done to you. In both cases, your liberty is being taken away. It's just a matter of how much. And I think that's really the key here. Even in this, they keep saying, oh, this is not that big of a burden. And the Pataki case said the same thing. Well, it's onerous, but it's just not onerous enough for us to find that it violates ex post facto. How do you determine how onerous taking away liberty is? Any taking away of liberty is onerous enough that it requires constitutional authority to do it. I think that's not here. Let me just address a few things real quick. Well, we're running over time. If you just want to sum up, I think we got a pretty good sense of what this case is about. I just want to correct one thing. I don't want you to be left with an improper impression. The notice is actually sent out, I believe, yearly. You get one notice that says, and in this case, TW got a notice that said on the second week of these four months of the coming year, you need to report. So it is not a situation where you don't have some advance notice. You do have advance notice. I don't think that's important. And as far as the issue of rational connection, yes. The first issue is whether there's a rational connection to the regulatory purpose, but then you immediately have to look at whether or not the method by which that is done is excessive in light of the purpose. And our position is that it's excessive here. Okay, thanks. Thanks, both sides, for an interestingly good argument in a tricky case. TW for Spokane County now submitted for decision. We'll take a ten-minute break.
judges: Lasnik, Fletcher W. , Rawlinson